United States District Court
Southern District of Texas
**ENTERED**
July 25, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. 2:07-CR-382-1 |
| | § | (CIVIL ACTION NPO. 2:16-CV-69) |
| HOMERO REY CANTU JR | § | |

**ORDER DENYING MOTION TO VACATE, SET ASIDE, OR
CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255,
AND DENYING A CERTIFICATE OF APPEALABILITY**

Homero Rey Cantu, Jr. (Cantu) filed a motion for transcripts that this Court construed to be a motion to vacate, set-aside or correct sentence pursuant to 28 U.S.C. § 2255. D.E. 219. The Court issued *Castro* warnings and Cantu filed the present motion. D.E. 222. The government responded and moved to dismiss the motion as time barred. D.E. 230. Cantu filed a reply. D.E. 231. The Court denies Cantu's § 2255 motion and also denies him a Certificate of Appealability.

**I. JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2255.

**II. BACKGROUND**

Cantu was indicted in July 2007 on two counts of conspiracy to engage in drug trafficking and money laundering. The Indictment included a notice of forfeiture for $1,000,000 in cash and residential real estate. D.E. 1. The drug conspiracy was alleged to date back to 2002. Cantu retained counsel and was detained pending trial. D.E. 10, 15, 16.

Two months after Cantu's arrest, another defendant was arrested and a Superseding Indictment was issued. D.E. 21. The Superseding Indictment alleged two separate drug trafficking conspiracies, one involving cocaine and another involving marijuana, a conspiracy to launder money and included an individual charge of making a false statement to obtain a loan at

a federally insured bank. It also added two co-defendants, Domingo Ramirez and Roel Bazan. D.E. 86.

Cantu allegedly controlled family ranch property in the Rio Grande Valley that he used to facilitate drug transportation around Border Patrol checkpoints. He also had relationships with other ranch owners and facilitated drug loads for others to avoid Border Patrol checkpoints.

In November 2007, Dominguez and Bazan pleaded guilty to Count Three of the Superseding Indictment pursuant to a plea agreement. D.E. 68, 71, 80, 81. Cantu contested the charges against him. His jury trial lasted two days in December 2007. Cantu was acquitted of the cocaine conspiracy, Count One, but convicted on Counts Two, Three and Four. D.E. 101.

After a contested sentencing hearing, Cantu was sentenced in March 2008 to 325 months for drug trafficking conspiracy, 240 months for money laundering, and 325 months on making false statements, all to run concurrently. D.E. 144. Cantu was also sentenced to 8 years supervised release for drug trafficking, 3 years for money laundering and 5 years for false statements, all to run concurrently. His judgment also included a $300 special assessment and forfeiture of $74,632.50. *Id*.

Cantu appealed, but his conviction and sentence were affirmed by the Fifth Circuit Court of Appeals on April 2, 2009.  This Court *sua sponte* denied Cantu a sentence reduction pursuant to Amendment 782 based on "the further need to protect the community." D.E. 210. Cantu filed a motion to reduce sentence pursuant to Amendment 782 motion six months later, which the Court denied. D.E. 211, 212. Cantu appealed that denial. D.E. 217. His appeal is still pending before the Fifth Circuit Court of Appeals.

Cantu's construed motion to vacate (D.E. 219) was mailed on January 31, 2016.

### III.  MOVANT'S ALLEGATIONS

Cantu's motion for transcripts laid out a claim of ineffective assistance of habeas counsel for failing to timely file his § 2255 motion. *Id*. In his supplemental motion, memorandum in support, and affidavit (D.E. 222, 223, 224), Cantu raises claims of ineffective assistance of counsel at sentencing and seeks equitable tolling of the state of limitation due to the failure of his § 2255 counsel to file the motion timely.

### IV.  ANALYSIS

**A.     28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: 1) constitutional issues, 2) challenges to the district court's jurisdiction to impose the sentence, 3) challenges to the length of a sentence in excess of the statutory maximum, and 4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam).

**B.     Statute of Limitations**

The government seeks dismissal of Cantu's motion on the grounds that it is untimely. A motion made under § 2255 is subject to a one-year statute of limitations, which, in most cases, begins to run when the judgment becomes final.[1] 28 U.S.C. § 2255(f). The Fifth Circuit and the

---

[1] The statute provides that the limitations period shall run from the latest of:

Supreme Court hold that a judgment becomes final when the applicable period for seeking review of a final conviction has expired. *Clay v. United States*, 537 U.S. 532 (2003); *United States v. Gamble*, 208 F.3d 536, 536-37 (5th Cir. 2000) (per curiam).

Cantu's conviction became final on July 1, 2009, after the expiration of the 90 day period to file an application for writ of certiorari. *See Clay*, 537 U.S. at 532. Cantu was required to file his motion to vacate no later than July 1, 2010. His motion was filed on January 31, 2016, over six years later.

Although the limitations period for § 2255 motions is not considered a jurisdictional bar, it is subject to equitable tolling "only 'in rare and exceptional cases.'" *United States v. Riggs*, 314 F.3d 796, 799 (5th Cir. 2002) (quoting *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998)). The party seeking equitable tolling bears the burden of demonstrating that tolling is appropriate. *United States v. Petty*, 530 F.3d 361, 365 (5th Cir. 2008). To satisfy his burden, Cantu must show that 1) he has diligently pursued his rights and 2) some extraordinary circumstance stood in his way. *Id*. Equitable tolling "applies principally where [one party] is actively misled by the [other party] about the cause of action or is prevented in some extraordinary way from asserting his rights." *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) (emphasis added).

Cantu has provided evidence that he hired counsel, Ray Taylor of Ray Taylor & Associates of San Antonio, to file a § 2255 motion shortly after the Fifth Circuit affirmed his

---

(1) *the date on which the judgment of conviction becomes final*;
(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from filing by such governmental action;
(3) the date on which the right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f) (emphasis added).

sentence. Cantu's affidavit (D.E. 224, ¶ 2) states that Taylor met with him in 2010 and advised Cantu that the § 2255 motion had been filed. Cantu requested a copy of the motion but did not receive one.

Cantu's brother, Toribio Cantu, provided an affidavit that states he paid Ray Taylor $25,000 on April 20, 2009. D.E. 231-1, ¶ 6, 231-3 (invoice from Ray Taylor & Associates reflecting credit of $25,000). Toribio Cantu also stated that he received a telephone call from Ray Taylor on October 2, 2009. Taylor stated he needed additional funds to conduct further investigation. Toribio Cantu paid another $3000. D.E. 231-1, ¶ 8, 231-3, p. 4. An additional payment of $4000 to Ray Taylor & Associates was made on November 6, 2009. D.E. 231-3, pp. 4-5. On February 10, 2010, a further payment of $8000 was made to allegedly cover the cost of a reply to the government's response. D.E. 231-1, ¶ 10, 231-3, p. 6. Homero Cantu states that he was contacted by one of Taylor's associates, Chris Gober, on an unspecified date in 2012. D.E. 224, ¶ 4. Cantu requested a copy of the § 2255 motion from Mr. Gober in 2012, but did not receive a copy. D.E. 219, p. 2; D.E. 224, p. 1. After his conversation with Mr. Gober, Cantu contacted Taylor and advised Taylor that Cantu did not want to work with Gober.

There appears to have been no further contact between the firm and either Cantu after 2012, although defendant Homero Cantu states, "I attempted to contact the law firm on three occasions [in 2013], but received no response" and "In 2014, I attempted to contact the law firm on four separate occasions, but received no response." D.E. 224, ¶¶ 6, 7. In 2015, after further efforts were unsuccessful, Cantu wrote the State Bar of Texas and learned that Taylor died in February 2015. In late September 2015, Toribio Cantu telephoned the Clerk and learned that no § 2255 motion was ever filed. D.E. 231, ¶ 14.

The government argues that Cantu was not diligent in protecting his rights. However, in *Wynn v. United States*, 292 F.3d 226 (5th Cir. 2002), the Fifth Circuit held that counsel's misrepresentation that a § 2255 motion had been filed justified equitable tolling and remanded for additional fact finding.

Through the face-to face meeting between Cantu and Taylor in 2010 at the Three Rivers BOP facility, there is evidence of diligence on the part of Cantu, even though counsel never sent a copy of the allegedly filed motion. However, by 2012, after contact by Taylor's associate, and further failure to provide a copy of the motion, after Cantu paid counsel $40,000, Cantu's efforts and those on his behalf do not appear to be a reasonable exercise of diligence, but the Court is unable to make that finding without appointing counsel and holding an evidentiary hearing. Before doing so, the Court considers the merits of Cantu's claim to determine whether further investigation is necessary.

C.     **Claims of Ineffective Assistance of Counsel**

1. *Standard for ineffective assistance of counsel*

Generally, an ineffective assistance claim presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. *Id*. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. *United States v. Dovalina*, 262 F.3d 472, 474-75 (5th Cir. 2001). To show that his attorney's performance at sentencing in a noncapital case was prejudicial under *Strickland*, the movant must demonstrate

that counsel's error led to an increase in the length of his imprisonment. *Glover v. United States*, 531 U.S. 198, 203 (2001); *United States v. Herrera*, 412 F.3d 577, 581 (2005).

If the movant fails to prove one prong, it is not necessary to analyze the other. *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

2. *Defense counsel failed object to drug quantity and leadership role*

Cantu argues that defense counsel failed to object to drug quantity or leadership role at sentencing and to argue the rule of lenity[2] in relation to the government's calculation of drug quantity. D.E. 223, p. 3. Cantu is factually incorrect in his assertion that counsel failed to object to drug quantity and to leadership role. *See* D.E. 124 (written objection to PSR).

The jury acquitted Cantu on Count One, conspiracy to possess with intent to distribute more than 5 kilograms of cocaine, but found him to be guilty of conspiracy to launder money involving the proceeds of drug trafficking. D.E. 101-1. The jury also found Cantu guilty of conspiracy to possess with intent to distribute more than 1000 kilograms of marijuana. *Id*.

Cantu's PSR calculated his base offense level of 38 based upon 33,414.67 kilograms, which included the marijuana equivalent of 87.3 kilograms of cocaine. D.E. 129, ¶ 66. His offense level was increased by four for his leadership role for a total offense level of 42, which

---

[2] The rule of lenity relates to statutory construction not the evaluation of evidence. It "fosters the constitutional due process principle 'that no individual be forced to speculate, at peril of indictment, whether his conduct is prohibited.'" *Dunn v. United States*, 442 U.S. 100, 112 (1979). "The rule of lenity ... applies only when, after consulting traditional canons of statutory construction, [a court is] left with an ambiguous statute." *United States v. Shabani*, 513 U.S. 10, 17 (1994) (emphasis added).

resulted in a sentencing guideline range for the marijuana conspiracy of 360 months to life imprisonment. *Id.*, ¶¶ 68-70, 106-09.

Counsel filed objections to the PSR. D.E. 124. He objected to the calculation of the base offense level on the ground of Cantu's acquittal on the cocaine conspiracy count, objected to application of leadership role and to the application of the money laundering enhancement. *Id*. The government argued that the calculation of drug quantity was appropriate and that the trial evidence supported Cantu's leadership enhancement. D.E. 126.

At the initial sentencing hearing, the Court sustained Cantu's objection to use of acquitted conduct to calculate drug quantity. D.E. 165, pp. 4-5. The Court overruled the objection to Cantu's leadership role in the offense based upon the trial testimony. *Id.*, p. 6. Counsel then orally objected to the quantity of marijuana and requested a further continuance. The Court granted the oral motion for continuance and sentencing was reset for two weeks later, March 13, 2008. Further objections were filed to the PSR in which Cantu objected to the scope of the conspiracy. D.E. 137. The government responded to the objection. D.E. 139.

The government presented Bazan, a co-defendant who did not testify at trial to testify at sentencing. Bazan testified about numerous loads of marijuana that Cantu was involved with from 2003 to 2006: 87 loads in 2003, 40 loads in 2004, 32 loads in 2005, and 10 loads in 2006, all of which were about 1500 pounds of marijuana. D.E. 166, p. 39. Based on Bazan's testimony, Cantu was involved with approximately 235,500 pounds or approximately 100,000 kilograms of marijuana. *Id.*, p. 42. Defense counsel aggressively cross-examined Bazan and argued that Cantu was not a leader. Additionally counsel argued that the amounts of drugs that were portrayed did not appear to be reasonable in light of Cantu's lifestyle.

Although the Court found Bazan to be credible, the Court adopted the PSR quantity of marijuana (without inclusion of the acquitted conduct) and a base offense level of 36 plus four levels for leadership with a total offense level of 40, which resulted in a sentencing guideline range of 292 to 365 months. *Id*., pp. 46-47. The guidelines were the same for all three counts. *Id*., p. 49. The Court sentenced Cantu to the maximum money laundering sentence of 240 months, the statutory maximum, and a mid-range guideline sentence for drug trafficking conspiracy and a false statement on a federal loan application of 325 months with all sentences to run concurrently.

Counsel did precisely what Cantu claims he should have done–vigorously opposed the drug quantity and application of leadership role. The Fifth Circuit held that the drug quantity and leadership role were amply supported by the evidence. *United States v. Cantu*, No. 08-40305 *4-5 (5th Cir. Apr. 2, 2009) (per curiam) (designated unpublished). No ineffective assistance of counsel is shown.

2. *Guideline application for false loan statements*

Counsel did not argue against application of the sentencing guideline range on the false statement count of the indictment, but Cantu does not allege any prejudice from counsel's failure to make that objection. Cantu's sentence of 325 months was less than the statutory maximum and was ordered to be served concurrently with his sentence on the remaining counts. Cantu has not met his burden to establish prejudice from counsel's alleged failure.

## V. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Cantu has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 Rules.

A COA "may issue. . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon *Slack*, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Cantu is not entitled to a COA on any of his claims. That is, reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. *See Jones*, 287 F.3d at 329.

## VI.  CONCLUSION

Even if Cantu were able to demonstrate that he exercised reasonable diligence in pursuing his claims throughout the 6 year period before he filed his present motion, Cantu has not met his burden to demonstrate the merit of his § 2255 claims. As a result, this Court does not need to further investigate his claim for equitable tolling.

Cantu's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 119; Cause No. 2:16-CV-69, D.E. 1) is DENIED and he is DENIED a Certificate of Appealability. The government's motion to dismiss (D.E. 230) is GRANTED.

SIGNED and ORDERED this 25th day of July, 2016.

Janis Graham Jack
Senior United States District Judge